UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Gateway Deliveries, LLC,** | |
| Plaintiff, | 2:14-cv-02033 JWS |
| vs. | ORDER AND OPINION |
| **Mattress Liquidators, Inc.,** *et al*. | [Re: Motion at Docket 10] |
| Defendants. | |

## I.  MOTION PRESENTED

At docket 10 defendants David Dolan and Sarah Thomas (collectively, "the individual defendants") move to dismiss plaintiff Gateway Deliveries, LLC's ("Gateway's") claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Gateway opposes at docket 18.  The individual defendants reply at docket 25.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

This case presents a dispute regarding a contract to provide mattress delivery services.  According to the complaint, Gateway entered into a contract with Bed Mart, Inc. ("Bed Mart") wherein Gateway was given the exclusive right to provide all of Bed Mart's deliveries from May 1, 2011 until April 30, 2016 ("the contract").  Bed Mart was acquired by Mattress Liquidators, Inc. ("Mattress Liquidators") who continued to honor the contract.  The individual defendants are officers of Mattress Liquidators.

In 2014 most of Mattress Liquidators' business was acquired by Mattress Firm. As part of the acquisition Mattress Firm required Mattress Liquidators to terminate the contract with Gateway. As a result, Gateway brought this action alleging contractual bad faith against Mattress Liquidators (Count 1) and tortiuos interference with contract or business expectancy against the individual defendants and Mattress Firm (Counts 2 and 3, respectively). The individual defendants now move to dismiss Count 2 of Gateway's complaint.

### III. STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[1] To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[2] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[3] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[4]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[2]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[3]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[4]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[6]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[7]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[8]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[9]

## IV.  DISCUSSION

The tort of intentional interference with contract subjects individuals to liability for "intentionally and improperly" interfering with the performance of a contract "between another and a third person."[10]  To establish a prima facie claim a plaintiff must show (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" (4) the interference was "improper;" and (5) "resultant damage to the party whose relationship or expectancy has been disrupted."[11]  It is impossible for a defendant to interfere with

---

[6]*Id.*

[7]*Id.* (citing *Twombly*, 550 U.S. at 556).

[8]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[9]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[10]Restatement (Second) of Torts § 766 (1979).

[11]*Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) (quoting *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. Ct. App. 1995)).

her own contract; interference with contract requires a contract between the plaintiff and a third party.[12]

The individual defendants argue that they cannot be held liable for interference with contract because, as Mattress Liquidators' corporate officers, they are considered parties to the contract.[13] Gateway responds by conceding that corporate officers are generally incapable of interfering with their own corporation's contracts, but it points out that there is an exception to this rule where the officer has acted so contrary to his corporation's interest that his actions "could only have been motivated by personal interests."[14] Gateway contends that terminating the contract was contrary to Mattress Liquidators' interests because it exposed Mattress Liquidators "to liability for breach of contract and/or breach of the duty of good faith and fair dealing."[15]

Generally speaking, corporate officers "are not outsiders intermeddling maliciously in the business affairs of the corporation. They are privileged to act on behalf of their corporations, using their business judgment and discretion."[16] If this privilege did not exist, a corporate officer's "freedom of action aimed toward corporate

---

[12] *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 464 (D. Ariz. 1996). *See also Barrow v. Arizona Bd. of Regents*, 761 P.2d 145, 152 (Ariz. Ct. App. 1988); *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 800 (6th Cir. 2007) ("'[T]tortious interference with contract requires proof . . . that the defendant was a "third-party" to the contractual relationship.'") (quoting *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 396 (E.D. Mich. 2000)).

[13] *See Payne v. Pennzoil Corp.*, 672 P.2d 1322, 1327 (Ariz. Ct. App. 1983) ("The appellees argue that since they were acting for Duval they were Duval, and that they could not interfere with their own contract. We agree.").

[14] Doc. 18 at 3 (quoting *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1038 (D Ariz. 2001)).

[15] Doc. 18 at 4.

[16] *George A. Fuller Co., a Div. of Northrop Corp. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1333 (7th Cir. 1983).

benefit" would be curtailed by fear of personal liability.[17]  Officers lose this privilege, however, where they act to serve their own private interests "with no benefit to the corporation."[18]  In such instances an officer may be liable for interference with contract because the officer "is wearing the hat of an outsider to the contractual parties."[19]  For individual liability to attach, the plaintiff must show more than mixed motives; the officer must have acted solely for his or her own benefit.[20]

Gateway's complaint does not state a claim against the individual defendants. Unlike the plaintiffs in the cases upon which Gateway relies, Gateway does not plead facts indicating that the individual defendants interfered with their corporation's contract out of personal motives and without the intent to further their corporation's interests.[21] To the contrary, Gateway alleges that terminating the contract allowed Mattress Liquidators to obtain a higher purchase price for its assets.[22]  Although Gateway alleges that the individual defendants benefitted from this higher price, that benefit is derivative

---

[17]*Id*.

[18]*Ong Hing v. Arizona Harness Raceway, Inc.*, 459 P.2d 107, 115 (Ariz. Ct. App. 1969).

[19]*Servo Kinetics, Inc.*, 475 F.3d at 801 (6th Cir. 2007).

[20]*S. Union Co.*, 165 F. Supp. 2d at 1039; *Olympic Fish Products, Inc. v. Lloyd*, 611 P.2d 737, 739 (Wash. 1980) ("The good faith test merely prevents corporate officers from pursuing purely personal goals with no intent to benefit the corporation."). *Cf. Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982) ("[W]here, as here, an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged.").

[21]*See AGA Shareholders, LLC v. CSK Auto, Inc.*, No. CV-07-0062-PHX-DGC, 2007 WL 2320532, at *1 (D. Ariz. Aug. 10, 2007) (plaintiffs alleged that individual defendants made false statements to artificially inflate the corporate stock price, which the individual defendants then sold for substantial profits); *Olympic Fish Products*, 611 P.2d at 602 (plaintiff submitted evidence showing that the individual defendant "gained more than an incidental benefit" from his corporation's breach of contract).

[22]Doc. 1 at 8 ¶ 63.

of Mattress Liquidators' improved financial condition.[23]  Because Gateway does not plead facts indicating that the individual defendants' interests were not aligned with those of Mattress Liquidators, Gateway effectively claims that Mattress Liquidators interfered with its own contract.  This claim fails as a matter of law.

## V.  CONCLUSION

For the reasons stated above, the individual defendants' motion to dismiss at docket 10 is **GRANTED**.  Claim 2 of Gateway's complaint is dismissed.

DATED this 16th day of April 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[23]*See* Doc. 1-4 at 17 ¶ 2.5 (stating that Mattress Firm would pay the purchase price of Mattress Liquidators' assets directly to Mattress Liquidators).  *See also Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995) ("[T]he mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation . . ., cannot alone constitute proof that the defendant committed an act of willful or intentional interference.").