UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Gateway Deliveries, LLC**     )<br>                  )<br>        Plaintiff,          )<br>                  )<br>   vs.             )<br>                  )<br>**Mattress Liquidators, Inc.**, *et al*.  )<br>                  )<br>        Defendants.         )<br>_____) | 2:14-cv-02033 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 89] |

## I. MOTION PRESENTED

At docket 89 plaintiff Gateway Deliveries, LLC ("Gateway") moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling defendants Mattress Liquidators, Inc. ("Liquidators") and Mattress Firm, Inc. ("Firm") (collectively, "Defendants") to produce documents they are withholding based on the attorney-client privilege and work product doctrine. Exhibits 1-3 to Gateway's motion are filed under seal at docket 92. Defendants oppose Gateway's motion at docket 98; Gateway replies at docket 100. Exhibits 22 and 23 to Gateway's reply are filed under seal in a non-electronic format. Oral argument was requested but would not assist the court.

## II.  BACKGROUND

Gateway entered into an exclusive mattress delivery agreement ("the Independent Contractor Agreement or ICA") with third-party Bed Mart, Inc. ("Bed Mart") in 2011.  After Bed Mart's assets were acquired by Liquidators, Liquidators continued to use Gateway for mattress deliveries.  Liquidators' assets were then acquired by Firm pursuant to an asset purchase agreement ("APA").  One of the APA's conditions required Liquidators to prove before closing that Liquidators' "arrangement" with Gateway had been terminated.  Defendants also entered into a "letter agreement," which Gateway refers to as the "side letter" to the APA, whereby Firm agreed to try to "negotiate and enter into a non-exclusive delivery agreement with Gateway" and Liquidators agreed to indemnify Firm if Gateway sued.[1]

Before the APA's closing date Defendants' former attorney, Gary Rosser ("Rosser"), wrote a November 4, 2013 opinion letter ("the Opinion Letter") that was disclosed to Gateway.  The letter concludes that the ICA was not binding on Liquidators and that Liquidators' relationship with Gateway was terminable at will.[2]  With this green light, Liquidators terminated its relationship with Gateway.  Gateway describes the Opinion Letter as not only "wrong" but also "result-oriented."[3]  According to Gateway, Defendants knew at the time that the ICA was binding on Liquidators.[4]

Gateway's action alleges bad faith against Liquidators and tortious interference with a contract or business expectancy against Firm.  In its present motion Gateway argues that by disclosing various communications with counsel "Defendants have waived the attorney-client privilege concerning the subject matter of the APA, the

---

[1] Doc. 89-2 at 25-28.

[2] *Id.* at 2-6.

[3] Doc. 89 at 4.

[4] *Id.* at 5.

existence and validity of a contract between Gateway and Liquidators, and how to address potential liability to Gateway through the APA and side letter thereto."[5]

### III.  STANDARD OF REVIEW

Evidence Rule ("Rule") 502, adopted on September 19, 2008, sets out the circumstances under which the disclosure of a communication or information in a federal proceeding acts as a subject matter waiver of the attorney-client privilege or work-product protection.  Rule 502's protections against waiver apply in all federal court proceedings, even in diversity-of-citizenship-jurisdiction cases where state law provides the rule of decision.[6]  Rule 502 does not, however, "alter the substantive law regarding attorney-client privilege or work-product protection in any other respect, including the burden on the party invoking the privilege (or protection) to prove that the particular information or communication qualifies for it."[7]  One element that the asserting party must establish to satisfy its burden is that it has not waived the privilege.[8]

### IV.  DISCUSSION

Gateway argues that a subject matter waiver occurred as a result of two separate productions.  The first is Defendants' production of five privileged emails on October 2, 2015.  And the second is Defendants' production of privileged emails in response to Gateway's initial requests for production.[9]

**A.    Defendants' October 2, 2015 Production**

Gateway focuses its first argument on Liquidators' October 2, 2015 disclosure of

---

[5]*Id.* at 15.

[6]Fed. R. Evid. 502(f).

[7]1-502 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 502.02 (2d ed. 2009).

[8]*Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

[9]Gateway also argues in its original motion that Rosser's pre-litigation disclosure of the Opinion Letter functions as a subject matter waiver and that Defendants waived by failing to timely produce a privilege log.  Gateway expressly abandons these two arguments in its reply.

"a number of . . . formerly-privileged documents and communications concerning" the Opinion Letter.[10]  Specifically, Gateway points to the following five emails:

1. An email containing an attachment that Rosser sent to Liquidators' executives Joe Partsch ("Partsch") and David Dolan ("Dolan") on October 30, 2013;[11]

2. An email that Partsch sent to Rosser on November 1, 2013 at either 12:04 pm or 7:03 pm;[12]

3. An email that Rosser sent to Partsch on November 1, 2013 at 11:16 pm;[13]

4. An email containing an attachment that Rosser sent to Dolan and Partsch on November 4, 2013;[14] and

5. An email that Partsch sent to Rosser on March 3, 2014.[15]

These emails do not appear on Defendants' Privilege Log.[16]  Gateway contends that Defendants disclosed them intentionally, thereby waiving the attorney-client privilege. By not responding to Gateway's arguments concerning these emails in their opposition, Defendants effectively concede that they waived the privilege through intentional disclosure.  The only remaining dispute is whether this waiver extends to all undisclosed materials that concern the same subject matter.

Citing authority that predates Rule 502, Gateway's argument relies on the former

---

[10] Doc. 89 at 6.

[11] Doc. 89-2 at 71-74.  A duplicate of this email is found at *id.* at 81-84.  Rosser sent the same email to Partsch and Dolan without the attachment on October 29, 2013 at 6:15 pm.  *See id.* at 48-49, 58-59, 67-68, 75-76, at 78-79.

[12] The version at doc. 89-2 at 48, 58, 67, and 78 shows that it was sent at 12:04 pm.  The version at doc. 89-2 at 75 shows that it was sent at 7:03 pm.

[13] Doc. 89-2 at 47.  Duplicates of this email are found at *id.* at 57, 66, and 77.

[14] *Id.* at 51-55.  Duplicates of this email are found at *id.* at 61-65, and 85-89.

[15] *Id.* at 56.  A duplicate of this email is found at *id.* at 70.

[16] *Id.* at 91-180.

general rule that "'the voluntary disclosure of privileged attorney-client communications . . . waives the privilege as to all other communications on the same subject.'"[17] This rule was modified when Rule 502(a) was adopted in 2008. Rule 502(a) now provides as follows:

> When [a] disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.[18]

The Advisory Committee's Notes state that Rule 502(a) establishes the new general rule that an intentional disclosure "results in a waiver *only of the communication or information disclosed*."[19] An exception to this general rule exists, and a subject matter waiver will be found, where the disclosed and undisclosed communications "ought in fairness to be considered together."[20] A subject matter waiver is therefore "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[21] To determine whether a given case

---

[17]Doc. 89 at 7 (quoting *Katz v. AT&T Corp.*, 191 F.R.D. 433, 439 (E.D. Pa. 2000)). Gateway also cites *Weil*, 647 F.2d at 25; and *United States v. Plache*, 913 F.2d 1375, 1380 (9th Cir. 1990).

[18]Fed. R. Evid. 502(a).

[19]Fed. R. Evid. 502(a) advisory committee's explanatory note (emphasis added).

[20]Fed. R. Evid. 502(a)(3).

[21]Fed. R. Evid. 502(a) advisory committee's explanatory note. *See also* 23 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 5444 (1st ed. 2015) (stating that Rule 502 "creates an exception allowing subject matter waiver only under unusual circumstances."); 3-502 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 502.02A (2d ed. 2009) ("[I]f intentional waiver is found, it applies only to the information disclosed, unless a broader subject-matter waiver is made necessary by the holder's intentional and misleading use of privileged or protected information."); *Trs. of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 11 (D.D.C. 2010) (holding that Rule 502(a) "abolishe[d] the dreaded subject-matter waiver, i.e., that any

presents such an unusual situation, courts must engage in "a case-specific analysis of the subject matter and adversaries."[22]

Gateway argues that the disclosed emails and the undisclosed materials concerning the same subject matter ought in fairness to be considered together because "otherwise Gateway is impeded from receiving full discovery on the merits of its claims, and Liquidators' witnesses would be insulated from cross-examination."[23] Specifically, Gateway argues that it should be allowed to discover Defendants' privileged communications because whether Liquidators knew that the ICA was binding while it was negotiating the APA is a relevant question of fact.[24]

But even if Liquidators' state of mind is relevant to Gateway's claims, Rule 502 protects against a subject matter waiver where the party asserting the privilege is not selectively and misleadingly presenting the disclosed materials as evidence.[25] Here, Defendants assert that they will not present evidence of their counsel's advice because they are not pursuing an advice-of-counsel defense.[26] The court will hold Defendants to this commitment and, accordingly, Defendants will not be using the attorney-client

---

disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter.").

[22]*Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1026 (7th Cir. 2012) (citing Fed. R. Evid. 502 advisory committee notes).

[23]Doc. 89 at 8.

[24]*Id.* at 5; Doc. 100 at 6.

[25]Fed. R. Evid. 502(a) advisory committee's explanatory note. *See also* 23 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 5444 (1st ed. 2015); 3-502 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 502.02A (2d ed. 2009); *Seyler v. T-Sys. N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) ("[T]he plaintiff's counsel made it clear at argument that the plaintiff will not use this email. Thus, this is not a case where a party intends to use the privileged communication and undisclosed attorney client communications ought in fairness to be considered together. Therefore, the plaintiff has not waived her privilege as to heretofore undisclosed communications.").

[26]Doc. 98 at 8-9 ("Liquidators is not asserting an advice-of-counsel defense, using the Opinion Letter or not.").

privilege as both a shield and a sword.[27] Considerations of fairness do not justify a subject matter waiver.

**B.     Defendants' Initial Production**

Gateway states that Liquidators' response to its initial request for production included ten privileged emails, and Firm's initial production included 16 privileged emails.[28] Gateway argues that these privileged emails were intentionally produced, resulting in a subject matter wavier that extends to all privileged communications regarding the Contract, the APA, and the so-called side letter.[29] Defendants dispute that the emails were intentionally disclosed, in which case Rule 502(a) would apply, arguing instead that they were inadvertently disclosed, in which case Rule 502(b) would apply. If the emails were inadvertently disclosed, as Defendants argue, there can be no subject matter waiver.[30]

There is no need for the court to resolve this dispute because even if the emails were intentionally disclosed, a subject matter waiver is not supported by the fairness considerations mentioned above. Defendants assert that they will not present the disclosed emails as evidence because they "have nothing to do with this lawsuit."[31] In light of this assertion, a subject matter waiver is not justified.

---

[27] *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.").

[28] Doc. 89 at 12.

[29] *Id.* at 13.

[30] Fed. R. Evid. 502(a) advisory committee's explanatory note ("an inadvertent disclosure of protected information can never result in a subject matter waiver.").

[31] Doc. 98 at 12.

## V.  CONCLUSION

Based on the preceding discussion, Gateway's motion to compel at docket 89 is **DENIED**.

DATED this 19th day of January, 2016.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE